STATE OF NORTH CAROLINA v. DAVID ALLEN JONES, DEFENDANT

No. COA05-311

(Filed 21 March 2006)

## 1. Evidence— videotape—failure to lay proper foundation— plain error analysis

The trial court did not commit plain error in a robbery of a convenience store with a dangerous weapon case by admitting into evidence a surveillance videotape of the crime, because: (1) although the State established an unbroken chain of custody but failed to present either evidence regarding the maintenance and

operation of the recording equipment or testimony that the video-
tape accurately portrayed the robbery, defendant did not cite a
case, nor was one found, where our courts have found an inade-
quacy in the foundation for the admission of a videotape to con-
stitute plain error; and (2) defendant made no showing that the
foundational prerequisites, upon objection, could not have been
supplied and has pointed to nothing suggesting that the videotape
in this case is inaccurate or otherwise flawed.

**2. Constitutional Law; Evidence— right to confrontation—
hearsay—plain error analysis**

The trial court did not commit plain error in a robbery of a
convenience store with a dangerous weapon case by permitting a
police officer to testify as to statements of the convenience store
clerk even though defendant contends the testimony violated his
Sixth Amendment right to confrontation and constituted inad-
missible hearsay, because: (1) in regard to defendant's Sixth
Amendment argument, defendant failed to preserve this constitu-
tional issue for appellate review since he did not raise it at trial;
and (2) in regard to defendant's hearsay contention, assuming
arguendo that the trial court erred by admitting these statements,
defendant nonetheless failed to establish that their admission
tilted the scales so as to cause the jury to render a guilty verdict.

**3. Evidence— prior crimes or bad acts—second robbery—
identity**

The trial court did not commit plain error in a robbery of a
convenience store with a dangerous weapon case by failing to
exclude testimony regarding a second robbery involving defend-
ant, because: (1) the similarities with the second robbery, only
two weeks later, was sufficient to identify defendant as the per-
petrator of both when it again involved defendant and a copartic-
ipant working together, plus the unusual but basically same sce-
nario of one robber, who knew the victim, distracting the victim
while the other robber entered the building to commit the rob-
bery, N.C.G.S. § 8C-1, Rule 404(b); (2) even if the robberies were
not sufficiently similar, defendant failed to establish that the
error was so fundamental that absent the error the jury probably
would have reached a different result; and (3) even though
defendant contends the trial court committed plain error by also
failing to exclude the evidence under N.C.G.S. § 8C-1, Rule 403,
our Supreme Court has not applied the plain error rule to issues
which fall within the realm of the trial court's discretion.

**4. Constitutional Law— effective assistance of counsel—dismissal of claim without prejudice**

Defendant's claim of ineffective assistance of counsel based on counsel's failure to object to certain evidence is dismissed without prejudice to his filing a motion for appropriate relief asserting this claim because the Court of Appeals has no way of knowing without further investigation whether a seemingly unusual or misguided action by counsel had a sound strategic motive or was taken because the counsel's alternatives were even worse.

Appeal by defendant from judgment entered 14 October 2004 by Judge William C. Griffin, Jr. in Beaufort County Superior Court. Heard in the Court of Appeals 16 November 2005.

*Attorney General Roy Cooper, by Special Deputy Attorney General Richard L. Harrison, for the State.*

*Appellate Defender Staples Hughes, by Assistant Appellate Defender Katherine Jane Allen, for defendant-appellant.*

GEER, Judge.

Defendant David Allen Jones appeals his conviction for robbery of a convenience store with a dangerous weapon. On appeal, he argues that the trial court committed plain error by (1) admitting into evidence a surveillance videotape of the crime, (2) failing to exclude testimony regarding another robbery involving defendant, and (3) permitting a police officer to testify as to statements of the convenience store clerk. Based upon our review of the record, we hold that defendant has failed to meet his burden of showing plain error with respect to any of this evidence and we, therefore, uphold his conviction.

Facts

Defendant was indicted for robbery with a dangerous weapon in connection with the September 2002 robbery of the Bridge Street 66 convenience store in Washington, North Carolina. Upon defendant's plea of not guilty, the case was tried beginning on 11 October 2004. The State called as witnesses: (1) Washington Police Department Detective Brad Boyd, who initially investigated the robbery; (2) Terrance Satchel, who joined with defendant in committing the robbery; and (3) Narcotics Detective Jonathan Kuhn, who interviewed

Satchel. In his defense, defendant offered alibi testimony by his girl-friend, Brandy Elliott, and her father, Clifton Lee Elliot.

Detective Boyd testified that he was called to the Bridge Street 66 during the very early morning hours of 3 September 2002 to investigate an armed robbery. At the scene, Detective Boyd interviewed both Satchel and the clerk at the store, Corey Hill. Detective Boyd testified that Satchel reported he was checking the price on a candy bar when he saw a man with a do-rag covering his face approach the door. According to Satchel, the masked man entered the store, pointed a chrome nine-millimeter handgun at the clerk, and demanded money. Satchel told Detective Boyd that, after the clerk turned over cash from the register, the robber then demanded the phone from the store's wall, smashed it on the floor, and left the store.

Detective Boyd also testified that Hill—who did not testify at trial—told him that at around 11:00 p.m., a heavy-set male, wearing a black shirt and black jeans, entered the store with a do-rag over his face. Hill reported to Detective Boyd that the man produced a chrome handgun and said, "Give me your money." According to Hill, he gave the man the money from the store's cash register but, when the robber demanded the store's "money bag," Hill told the robber he did not have it. Hill, like Satchel, described the robber as demanding the store's phone, which the robber then threw to the floor and broke. The robber made Hill lie on the floor until after he left.

During his investigation of the robbery, Detective Boyd obtained the store's surveillance videotape. After the detective testified that it had not been altered and was in substantially the same condition as on the evening of the robbery, the tape was admitted into evidence, without objection, and played for the jury. The tape shows events substantially similar to those described to the detective by both Satchel and Hill.

The State next called Satchel to testify. Satchel told the jury that he was friends with defendant. Prior to the robbery on 2 September 2002, defendant had complained to Satchel about not having enough money to both pay rent and buy marijuana and had told Satchel they were going to rob the Bridge Street 66 around midnight. Satchel would be the "lookout," while defendant committed the robbery. According to Satchel, they met at a park near the store at about 11:30 p.m. At that time, defendant had a chrome nine-millimeter handgun with him.

Sometime before midnight, Satchel entered the store to distract anyone inside. Satchel, who knew Hill from shopping at the Bridge Street 66 in the past, asked Hill for the price of several items. Defendant then approached Hill with a do-rag covering most of defendant's face. Satchel's trial testimony describing the actual robbery was substantially similar to what he had previously told Detective Boyd.

The State next called Detective Kuhn as a witness. He testified that Satchel contacted him about two weeks after the robbery and told him that, on 2 September 2002, defendant had mentioned committing a robbery to get money for bills and marijuana. Satchel told Detective Kuhn that he had agreed to help defendant rob the Bridge Street 66 by going into the store first "to buy something and pretend to be looking around," so that the clerk would not see defendant coming. Satchel's description to Detective Kuhn of the actual robbery was substantially similar to the previous accounts.

Defendant did not testify in his own defense. Rather, he first called Clifton Lee Elliot, the father of his girlfriend, Brandy Elliot. According to Mr. Elliot, defendant lived with him and his daughter. Mr. Elliot testified that, on 2 September 2002, defendant and his daughter had left in the afternoon to go to a party that evening in Greenville, North Carolina. Brandy Elliot similarly testified that she and defendant went to the party in Greenville, stayed there until nearly midnight, and then returned directly to the Elliots' apartment.

On 14 October 2004, the jury found defendant guilty of robbery with a dangerous weapon. The trial court sentenced defendant within the presumptive range to 90 to 117 months imprisonment. Defendant timely appealed.

I

[1] Defendant first contends that the trial court committed plain error when it admitted the surveillance videotape into evidence because the State failed to establish a proper foundation. " 'The plain error rule applies only in truly exceptional cases. Before deciding that an error by the trial court amounts to "plain error," the appellate court must be convinced that absent the error the jury probably would have reached a different verdict. In other words, the appellate court must determine that the error in question "tilted the scales" and caused the jury to reach its verdict convicting the defendant.' " *State v. Duke*, 360 N.C. 110, 138-39, 623 S.E.2d 11, 29-30 (2005) (internal

citations omitted) (quoting *State v. Walker*, 316 N.C. 33, 39, 340 S.E.2d 80, 83-84 (1986)).

In *State v. Mason*, 144 N.C. App. 20, 550 S.E.2d 10 (2001), this Court considered the admission of a surveillance camera videotape showing an armed robbery of a drug store. This Court held that there are "three significant areas of inquiry for a court reviewing the foundation for admissibility of a videotape: (1) whether the camera and taping system in question were properly maintained and were properly operating when the tape was made, (2) whether the videotape accurately presents the events depicted, and (3) whether there is an unbroken chain of custody." *Id.* at 26, 550 S.E.2d at 15. In *Mason*, although the State's witnesses testified that the video camera was in working order, they subsequently admitted that they knew nothing about the maintenance or operation of the system. In addition, no testimony was offered as to the accuracy of the events shown on the tape, and the State failed to establish an unbroken chain of custody. Based on this showing, the Court held that the tape was improperly admitted over the defendant's objection and ordered a new trial. *Id.* at 27, 550 S.E.2d at 15-16. *See also State v. Sibley*, 140 N.C. App. 584, 586, 537 S.E.2d 835, 838 (2000) (ordering new trial when "[t]he State did not call any witnesses to testify that the camera was operating properly or that the information depicted on the videotape was an accurate representation of the events at the time of filming").

In this case, although the State established an unbroken chain of custody, it failed to present either evidence regarding the maintenance and operation of the recording equipment or testimony that the videotape accurately portrayed the robbery. Nevertheless, defendant has not cited any case—and we have found none—in which our courts have found an inadequacy in the foundation for the admission of a videotape to constitute plain error.

Based upon our review of the record, it appears that if defendant had made a timely objection, the State could have supplied the necessary foundation through testimony of the police officer, Satchel, or other witnesses. Cases addressing the admissibility of surveillance videotapes suggest it is a relatively straightforward matter to lay the necessary foundation. *See, e.g., State v. Mewborn*, 131 N.C. App. 495, 498-99, 507 S.E.2d 906, 909 (1998) (concluding that police officers' testimony was sufficient to lay foundation when they testified that they watched surveillance videotape twice on the day of the robbery, and that clip shown at trial was in same condition and had not

been edited); *State v. Cannon*, 92 N.C. App. 246, 254, 374 S.E.2d 604, 608-09 (1988) (concluding store manager's testimony laid a sufficient foundation when she testified that surveillance videotape accurately showed robbery, camera was only six weeks old, and system was working properly both before and after robbery), *disc. review denied in part*, 324 N.C. 249, 377 S.E.2d 757, *appeal dismissed in part sub nom. State v. Redmon*, 324 N.C. 249, 377 S.E.2d 761 (1989), *rev'd in part on other grounds*, 326 N.C. 37, 387 S.E.2d 450 (1990).

Since defendant has made no showing that the foundational prerequisites, upon objection, could not have been supplied and has pointed to nothing suggesting that the videotape in this case is inaccurate or otherwise flawed, we decline to conclude the omissions discussed above amount to plain error. Any error in the introduction of the videotape "into evidence without adequate foundation is not the type of exceptional case where we can say that the claimed error is so fundamental that justice could not have been done." *State v. Cummings*, 352 N.C. 600, 620-21, 536 S.E.2d 36, 51-52 (2000), *cert. denied*, 532 U.S. 997, 149 L. Ed. 2d 641, 121 S. Ct. 1660 (2001). *See also State v. McNeil*, 165 N.C. App. 777, 784-85, 600 S.E.2d 31, 36-37 (2004) (concluding that, where trial court admitted unauthenticated judgment sheets of defendant's prior convictions, defendant failed to establish plain error when he had an opportunity to inspect judgment sheets at trial and offered no evidence they were not authentic or that prior convictions had not occurred), *aff'd on other grounds*, 359 N.C. 800, 617 S.E.2d 271 (2005). This assignment of error is, therefore, overruled.

## II

**[2]** Defendant next assigns plain error to the admission of Detective Boyd's testimony regarding certain statements made to him by the store clerk Hill on the grounds that the testimony violated his Sixth Amendment right of confrontation and constituted inadmissible hearsay. Defendant acknowledges that no objection was made to this testimony at trial.

"[C]onstitutional error will not be considered for the first time on appeal. Because defendant did not raise these constitutional issues at trial, he has failed to preserve them for appellate review and they are waived." *State v. Chapman*, 359 N.C. 328, 366, 611 S.E.2d 794, 822 (2005) (internal citations omitted). Accordingly, we decline to consider defendant's Sixth Amendment argument.

Regarding defendant's hearsay contention, defendant challenges only Detective Boyd's testimony as to Hill's statements that (1) the robber had a large chrome gun, (2) the robber demanded money, and (3) Hill gave the robber $67.69. Assuming, without deciding, that the trial court did err by admitting these statements, defendant has nonetheless failed to establish under the plain error doctrine that their admission "tilted the scales" so as to cause the jury to render a guilty verdict. *State v. Dyson*, 165 N.C. App. 648, 653, 599 S.E.2d 73, 77 (2004), *disc. review denied*, 359 N.C. 412, 612 S.E.2d 326 (2005).

Both the surveillance videotape and Satchel's trial testimony, as corroborated by Detectives Boyd and Kuhn, provided substantial evidence that the robber had a chrome gun, that he demanded money, and that Hill gave the robber currency from the store's register. The precise amount of money taken from the register was immaterial. *See State v. Call*, 349 N.C. 382, 417-18, 508 S.E.2d 496, 518 (1998) (concluding State met its burden on "taking" element of armed robbery where, despite not proving exactly how much money was taken, evidence suggested victim commonly carried large sums of money but was found dead with only $9.00). Although defendant has challenged the admission of the videotape, this Court has held: "Where, as here, defendant contests separate admissions of evidence under the plain error rule, each admission will be analyzed separately for plain error, not cumulatively." *State v. Bellamy*, 174 N.C. App. 649, 662, 617 S.E.2d 81, 90 (2005). We cannot conclude, in light of the other evidence presented at trial, that the specific statements challenged had a probable effect on the verdict. Accordingly, we overrule this assignment of error.

### III

[3] Defendant next argues that the trial court erred, under North Carolina Rule of Evidence 404(b), by admitting the testimony of Detective Boyd and Satchel regarding defendant's involvement in a second robbery. During the course of the trial, Satchel testified that he and defendant had been arrested on another charge approximately two weeks after the Bridge Street 66 robbery. Detective Boyd similarly testified that he had received another call regarding a common law robbery at a residence on 15 September 2002 and that, in the course of his investigation, he had determined that Satchel and defendant, together with a third person, had committed that robbery. Detective Boyd described the robbery as "basically the same scenario: One of the suspects went in somewhat as a lookout because she knew the victim, and at that point in time, the other two entered

and robbed him or attempted to rob him." Since defendant did not object to this testimony at trial, we again review only for plain error. N.C.R. App. P. 10(c)(4).

"Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake, entrapment or accident." N.C.R. Evid. 404(b). It is well-established that Rule 404(b) sets forth "a clear general rule of *inclusion* of relevant evidence of other crimes, wrongs or acts by a defendant, subject to but *one exception* requiring its exclusion if its *only* probative value is to show that the defendant has the propensity or disposition to commit an offense of the nature of the crime charged." *State v. Coffey*, 326 N.C. 268, 278-79, 389 S.E.2d 48, 54 (1990).

The State argues in this case that the evidence of a second robbery involving defendant and Satchel is admissible to establish the identity of the perpetrator of the Bridge Street 66 robbery by showing a *modus operandi. See State v. Sokolowski*, 351 N.C. 137, 150, 522 S.E.2d 65, 73 (1999) ("[T]he other crime may be offered to show defendant's identity as the perpetrator when the *modus operandi* is similar enough to make it likely that the same person committed both crimes."). Another crime "is sufficiently similar to warrant admissibility under Rule 404(b) if there are some unusual facts present in both crimes or particularly similar acts which would indicate that the same person committed both crimes." *Id.* (internal quotation marks omitted). It is not, however, "necessary that the similarities between the two situations rise to the level of the unique and bizarre." *Id.* (internal quotation marks omitted). Instead, "the similarities must tend to support a reasonable inference that the same person committed both the earlier and later acts." *Id.*

On appeal, defendant argues that the two robberies did not possess any unusual facts, but rather involved only facts generic to all robberies. We disagree. As Detective Boyd testified, the second robbery, only two weeks later, again involved Satchel and defendant working together plus the unusual but "basically . . . same scenario" of one robber, who knew the victim, distracting the victim while the other robber entered the building to commit the robbery. In our view, these similarities are sufficient to identify defendant as the perpetrator of both. *See State v. Davis*, 340 N.C. 1, 14, 455 S.E.2d 627, 633-34 (finding sufficient similarity between robbery and attempted robbery

where suspects in both: (1) entered premises armed and waited until closing time, (2) pretended to be on premises to conduct legitimate business, and (3) one suspect remained silent during both crimes), *cert. denied*, 516 U.S. 846, 133 L. Ed. 2d 83, 116 S. Ct. 136 (1995); *State v. Diehl*, 147 N.C. App. 646, 652, 557 S.E.2d 152, 156-57 (2001) (holding that evidence of a second robbery was admissible when the defendant was driven to and picked up from the crime scene by a single accomplice, the robberies occurred in the same area at night, the defendant used a knife, and the crimes occurred within five days of each other), *cert. denied*, 356 N.C. 170, 568 S.E.2d 624 (2002); *State v. Allred*, 131 N.C. App. 11, 18, 505 S.E.2d 153, 158 (1998) (finding evidence admissible under Rule 404(b) when both robberies occurred at midnight beginning with a knock at the door, involved two perpetrators, included a demand that the victims give up their "stash," and occurred within 10 days of each other).

Even if the robberies were not sufficiently similar, defendant has failed to establish under the plain error standard that " 'the error was so fundamental that, absent the error, the jury probably would have reached a different result.' " *State v. Augustine*, 359 N.C. 709, 717, 616 S.E.2d 515, 523 (2005) (quoting *State v. Jones*, 355 N.C. 117, 125, 558 S.E.2d 97, 103 (2002)). We do not believe, given Satchel's testimony as corroborated by his statements to the detectives and the videotape, that the jury would have "probably" reached a different result had the challenged testimony been excluded.

Defendant also argues that the trial court committed plain error in failing to exclude the evidence under Rule 403. "Whether or not to exclude evidence under Rule 403 of the Rules of Evidence is a matter within the sound discretion of the trial court and its decision will not be disturbed on appeal absent a showing of an abuse of discretion." *State v. McCray*, 342 N.C. 123, 131, 463 S.E.2d 176, 181 (1995). Our Supreme Court has previously held: "[T]his Court has not applied the plain error rule to issues which fall within the realm of the trial court's discretion, and we decline to do so now." *State v. Steen*, 352 N.C. 227, 256, 536 S.E.2d 1, 18 (2000), *cert. denied*, 531 U.S. 1167, 148 L. Ed. 2d 997, 121 S. Ct. 1131 (2001). We, therefore, do not address defendant's Rule 403 argument.

IV

[4] Finally, defendant argues that because his trial counsel failed to object to the admission of the videotape, Detective Boyd's hearsay testimony regarding what he was told by Hill, and the evidence

regarding defendant's involvement in another robbery, he received ineffective assistance of counsel. Claims of ineffective assistance of counsel are, however, most properly raised in a motion for appropriate relief. Our Supreme Court has held that an ineffective assistance claim brought on direct review will be decided on the merits only "when the cold record reveals that no further investigation is required, i.e., claims that may be developed and argued without such ancillary procedures as the appointment of investigators or an evidentiary hearing." *State v. Fair*, 354 N.C. 131, 166, 557 S.E.2d 500, 524 (2001), *cert. denied*, 535 U.S. 1114, 153 L. Ed. 2d 162, 122 S. Ct. 2332 (2002).

In this case, we "have no way of knowing whether a seemingly unusual or misguided action by counsel had a sound strategic motive or was taken because the counsel's alternatives were even worse." *Massaro v. United States*, 538 U.S. 500, 505, 155 L. Ed. 2d 714, 720, 123 S. Ct. 1690, 1694 (2003). Because we cannot assess without "further investigation" whether defendant received ineffective assistance of counsel, we dismiss defendant's appeal on this issue without prejudice to his filing a motion for appropriate relief asserting this claim.

No error.

Judges HUNTER and McCULLOUGH concur.